Warren K. **PYLES**, Plaintiff,

v.

**THE BOEING COMPANY,** Defendant.

**No. CIV.A. 00–2394–KHV.**

United States District Court,
D. Kansas.

Feb. 22, 2002.

---

Dennis E. Egan, Claudio E. Molteni, The Popham Law Firm, P.C., Kansas City, MO, Alan L. Rupe, Hussch & Eppenberger, LLC, Cortland E. Berry, Wichita, KS, Deborah L. Hughes, Lawrence, KS, for Plaintiff.

Warren K. Pyles, Benton, KS, Pro se.

Jay F. Fowler, Boyd A. Byers, Foulston & Siefkin L.L.P., Wichita, KS, for Defendant.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Warren K. Pyles brings employment discrimination and retaliation claims against The Boeing Company ("Boeing") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* as amended, the Kansas Acts Against Discrimination, K.S.A. § 44–1001 *et seq.* and the Civil Rights Act of 1871, 42 U.S.C. §§ 1981 and 1983. This matter comes before the Court on *Defendant's Motion For Partial Summary Judgment* (Doc. # 47) filed September 28, 2001. For reasons stated below, the Court sustains defendant's motion.

Defendant asserts that it is entitled to partial summary judgment because (1) plaintiff did not exhaust administrative remedies on his KAAD claims (Count 4); (2) plaintiff's Title VII claims on his first discrimination charge (parts of Counts 2 and 3) are barred because he did not file suit within 90 days after he received his first right to sue letter from the Equal Employment Opportunity Commission ("EEOC"); (3) plaintiff's Title VII claims on his second discrimination charge (parts of Counts 2 and 3) are limited to acts which occurred between August. 8, 1997 and October 7, 1998; and (4) plaintiff's Section 1981 claims (Count 1) are limited to acts which occurred between October 22, 1997 and October 7, 1998. Plaintiff does not contest defendant's motion with respect to his KAAD claims or the beginning dates of his Section 1981 claims and Title VII claims. Plaintiff asserts, however, that the Court should equitably toll the Title VII claims on his first discrimination charge. Plaintiff also urges the Court to disregard his stipulation that his claims are limited to acts and events which occurred on or before October 7, 1998.

### Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238,

1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *See Applied Genetics*, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. *See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### Facts

The following facts are either uncontroverted or construed in a light most favorable to plaintiff.

In March 1987, Boeing hired plaintiff to work as a hand router operator in Wichita, Kansas. Plaintiff worked in the hand router position for about ten years, until January 1997, when he moved to the position of materials processor requisition facilitator B. In July 1997, Boeing promoted plaintiff to maintenance oiler. In January 1998, Boeing upgraded him to a mill wright position.

On February 28, 1997, plaintiff filed his first charge of discrimination with the Kansas Human Rights Commission ("KHRC"). Plaintiff claimed that Boeing had discriminated against him on the basis of race from January 1995 to January 28, 1997. Specifically, plaintiff alleged that Boeing had verbally harassed him and denied him overtime, transfers and promotions. On the same day, plaintiff cross-filed his charge with the EEOC.

On June 4, 1998, a class action racial employment discrimination suit was filed against Boeing in the United States District Court for the Western District of Washington. *See Williams v. The Boeing Co.*, Case No. C98 761C. McKay, Huffington, Harrel & Desper, P.L.L.C. ("McKay Huffington") represented plaintiff as a class member.

On September 29, 1998, the EEOC issued plaintiff a notice of right to sue on his first charge of discrimination.

On November 2, 1998, plaintiff filed a second charge of discrimination with the KHRC. In the second charge, plaintiff alleged that Boeing had retaliated and discriminated against him on the basis of race from November 1997 to October 7, 1998. Specifically, plaintiff claimed that Boeing denied him supervisory positions and failed to compensate him for back pay relating to a previous grievance. On November 5, 1998, plaintiff cross-filed the second charge with the EEOC.

On April 13, 1999, plaintiff opted out of the *Williams* class. At that time, McKay Huffington told plaintiff "not to worry," *i.e.* that his rights would be protected. Plaintiff relied on these assurances in not timely filing his Title VII claims.

On November 19, 1999, McKay Huffington advised plaintiff that the statute of limitations might be running on his Title VII claims. Specifically, McKay Huffington issued a memorandum which stated:

If you plan to pursue an individual law suit in this matter, you should contact a lawyer in your area to review the merits of your claim and provide you with advice as to how to proceed.... **This should be done immediately to avoid the running of any Statute of Limitations. In other words, there are specific time limits with which you can initiate a law suit against the Defendants in this matter.**

Exhibit 1(A) (emphasis in original), *Plaintiff's Response To Defendant's Motion For Partial Summary Judgment* (Doc. # 73) filed January 14, 2002.

On November 23, 1999, plaintiff retained new counsel, Render & Kamas, L.C.

On August 25, 2000, Render & Kamas terminated its representation of plaintiff.

On August 31, 2000, the EEOC issued plaintiff a notice of right to sue on his second charge of discrimination. On the same day, plaintiff retained new counsel and filed his complaint in this case.

On August 27, 2001, the parties filed a *Stipulation* (Doc. # 40) which states that plaintiff's claims in this case are limited to acts and events which occurred on or before October 7, 1998. Plaintiff and his former attorney confirmed this stipulation several times at plaintiff's deposition. *See Pyles Deposition* at 22 11.5–16, 27 1.22 to 28 1.10, 295 1.20 to 296 1.14, Exhibits to *Memorandum In Support Of Defendant's Motion For Partial Summary Judgment* ("*Defendant's Memorandum*") (Doc. # 48) filed September 28, 2001 and *Reply Memorandum In Support Of Defendant's Motion For Partial Summary Judgment* ("*Defendant's Reply*") (Doc. # 75) filed February 6, 2002.

In response to defendant's motion for partial summary judgment, plaintiff presents affidavit testimony which states that "I was unaware of the fact that my counsel entered into a stipulation with Boeing limiting the scope of my claims" and that "I

did not consent to the same." *Declaration Of Warren Pyles* ("*Pyles Declaration*") ¶ 2, Exhibit 1 to *Plaintiff's Response To Defendant's Motion For Partial Summary Judgment* (Doc. # 73) filed January 14, 2002.

Plaintiff was unaware of any procedural defects with his suit until defendant filed its motion for partial summary judgment.

## *Analysis*

### I. Equitable Tolling

Defendant asserts that plaintiff's Title VII claims on his first discrimination charge are untimely. Under Title VII, plaintiff must file suit within 90 days after he receives notice of his right to sue. *See* 42 U.S.C. § 2000e–5(f)(1). The 90–day period is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Plaintiff was a class member in *Williams* at the time he received his first notice of right to sue. The time for him to file suit was tolled until April 13, 1999, when he opted out of the class action. *See Ballen v. Prudential Bache Sec., Inc.*, 23 F.3d 335, 337 (10th Cir.1994) (filing class action tolls time limitation for putative class members until certification denied or until plaintiff opts out); *Biglow v. Boeing Co.*, 174 F.Supp.2d 1187, 1193 (D.Kan.2001). Plaintiff waited more than a year later, until August 31, 2000, to file his claims in this case. His claims are therefore untimely, unless the time limits were tolled.

Plaintiff urges the Court to toll the time for him to file his Title VII claims because at the time he opted out of *Williams,* his counsel assured him not to worry and that his rights would be protected. The Tenth Circuit narrowly construes equitable exceptions to Title VII time limitations. *See Biester v. Midwest Health Servs., Inc.,* 77 F.3d 1264, 1267

(10th Cir.1996). Permissible grounds include circumstances which rise to the level of active deception and cases in which plaintiff's past employer, state or federal agencies or the courts have lulled plaintiff into inaction. *See id.* (citations omitted).

■ Plaintiff cites no case which supports his argument that assurances by his *own* counsel may warrant equitable tolling of his claims. The Court is aware of none. *Cf. Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (excusable neglect by counsel does not warrant equitable tolling); *Merrill v. Cintas Corp.,* 941 F.Supp. 1040, 1045 (D.Kan.1996) (error by counsel attributed to client who must seek redress from errant lawyer rather than defendant). Moreover, even if the Court were to accept plaintiff's theory, his claims are still untimely. Plaintiff admits that on November 19, 1999, his lawyers advised him to contact a lawyer immediately to avoid the running of any statute of limitations. Plaintiff did not file suit until August 31, 2000—more than 9 months after he received such notice.

■ Plaintiff also asserts that the Court should toll his claims because he did not learn of procedural defects in his case until defendant filed its motion for partial summary judgment. The case which plaintiff cites, however, states that the essence of equitable tolling is to protect a plaintiff who is not aware of his cause of action. *See Foutty v. Equifax Servs., Inc.,* 762 F.Supp. 295, 298 (D.Kan.1991). It does not involve a plaintiff who was unaware of a *procedural defect* in his cause of action. *See id.* The record is clear that plaintiff knew of his cause of action at the time he filed his charge of discrimination. Thus plaintiff has not shown grounds which warrant equitable tolling of the Title VII claims on his first discrimination charge.

## II. Stipulation Regarding Scope of Plaintiff's Claims

■ Based on its stipulation with plaintiff, defendant seeks to limit plaintiff's remaining claims (Section 1981 and Title VII claims on the second discrimination charge) to acts and events which occurred on or before October 7, 1998. On August 27, 2001, the parties filed a stipulation which states:

> plaintiff is not maintaining a cause of action or seeking recovery in this lawsuit for any events or alleged acts of discrimination that occurred after October 7, 1998. The parties thus do hereby agree and stipulate that the instant law suit is limited to events and alleged acts of discrimination that occurred on or before October 7, 1998.

*Stipulation* (Doc. # 40). A stipulation constitutes an admission which "cannot be disregarded or set aside at will." *Wheeler v. John Deere Co.,* 935 F.2d 1090, 1097 (10th Cir.1991) (quoting *Lyles v. Am. Hoist & Derrick Co.,* 614 F.2d 691, 694 (10th Cir.1980)). Stipulations, however, are not absolute; if necessary, the Court may allow a party to withdraw a stipulation to prevent manifest injustice. *See Wheeler,* 935 F.2d at 1098. The Court has broad discretion to determine whether to set aside a stipulation. *See id.*

In response to defendant's motion, plaintiff presents affidavit testimony that he did not consent to the stipulation and was unaware of its existence. *See Pyles Declaration* § 2. The transcript of plaintiff's deposition, however, reveals that plaintiff clearly knew of the stipulation and agreed to it.[1] In fact, plaintiff confirmed the stipulation at least three separate times:

---

1. It appears that plaintiff's deposition was taken on two days. *See Pyles Deposition* at 295 1.20, Exhibit to *Defendant's Reply.* The record does not reveal the date of the first day of the deposition. The second day of the deposition was June 27, 2001. *See* cover

Q: Okay. So if I understand, Mr. Pyles, ... the notes that you have in front of you ..., those go through October 7 of 1998 and that's the last date of any alleged discrimination that's part of this lawsuit today?

A: I believe so.

Q: Okay.

MR. BYERS: And, Mr. Berry, that's your understanding as well?

MR. BERRY: That's my understanding.

Q: And it's my understanding now that you have some notes, Mr. Pyles, for ... alleged discrimination that occurred after October 7th of 1998 but you and your lawyer are not producing those to me in this case because it's your contention that those are going to be part of a separate new lawsuit. Is that correct?

A: Correct.

*Pyles Deposition* at 22 11.5–25, Exhibit to *Defendant's Memorandum.*

MR. BERRY: and we probably will be, in this lawsuit, be presenting evidence of [discrimination] from the start up to October of '98.

MR. BYERS: Okay. So this current lawsuit, depending on what the judge decides to letin, is going to cover everything from the day that Mr. Pyles was hired ... up through October 7 of 1998.

MR. BERRY: Mm-hmm.

Q: Is that your understanding as well, Mr. Pyles?

A: Yes.

*Id.* at 27 1.22 to 28 1.10.

Q: Okay. And you said yesterday that you had some notes from after October 8, 1998 ... but you're not turning those over because this law suit today ... only covers employ-

ment actions and alleged acts of discrimination up through October 8 of 1998. Is that right?

MR. BERRY: That's right, believe so, cause we got [sic] a separate law suit coming.

MR. BYERS: Right.

MR. BERRY: Two bites at the apple.

Q: Okay. So you may have some names ... of other people that you think maybe got promoted to management jobs sometime after October 8 of 1998 but that's not part of this lawsuit, is that right?

A: That's right.

*Id.* at 295 1.20 to 296 1.14, Exhibit to *Defendant's Reply.*

Plaintiff offers no facts or circumstances which suggest that enforcing the stipulation would be unjust. The Court therefore finds that plaintiff's claims in this case are limited to acts and events which occurred on or before October 7, 1998.

**IT IS THEREFORE ORDERED** that *Defendant's Motion For Partial Summary Judgment* (Doc. # 47) filed September 28, 2001 be and hereby is **SUSTAINED.** The Court grants partial summary judgment in favor of defendant on plaintiff's KAAD claims (Count 4) and Title VII claims on his first discrimination charge (parts of Counts 2 and 3). In addition, the Title VII claims on plaintiff's second discrimination charge (parts of Counts 2 and 3) are limited to acts which occurred from August 8, 1997 to October 7, 1998 and plaintiff's Section 1981 claims (Count 1) are limited to acts which occurred from October 22, 1997 to October 7, 1998.

page of *Pyles Deposition,* Exhibit to *Defendant's Reply.* Boyd A. Byers represented de-fendant at the deposition, and Cortland E. Berry represented plaintiff. *See id.*